TODD CHRISTIANSON                    10/26/2006            GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                                 3:06-CV-00060

Page 16

```
 1   Q   And the first page of this exhibit is -- purports to
 2       be a memorandum from you dated right -- the week
 3       after the accident.  Do you recall preparing that
 4       memorandum on page one?
 5   A   This.....
 6   Q   The first.....
 7   A   Yes.
 8   Q   Okay.  And what was the purpose of this, if you
 9       recall?
10   A   I think just to designate who owned -- what the status was
11       for the hydro seeder.
12   Q   Okay.  And we've talked about most of -- of what's in
13       here.  About four paragraphs down in that first page it
14       says Keith was employed both by Titan Enterprises, LLC,
15       when hydro seeding and Titan Topsoil when driving trucks.
16       Do you see that?
17   A   Uh-huh.  (Affirmative)
18   Q   And I've got some payroll records we'll look at later.
19       But just so that we're clear, it was Titan Enterprises on
20       the day of the accident?
21   A   Yeah.
22   Q   Okay.  And then the second to the last paragraph
23       talks about Great Alaska Lawn and Landscaping.  We're
24       still on page one, Todd.  Established in '92, did
25       business as a landscape company, currently no
```

Exhibit __A__
Page __17__ of __21__ Pages

Computer Matrix, LLC              Phone - 907-243-0668                jpk@gci.net
310 K Street, Suite 200           Fax     907-243-1473                sahile@gci.net

TODD CHRISTIANSON                10/26/2006            GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                                3:06-CV-00060

Page 17

1   employees working for Great Alaska Lawn. And that
2   was true as of that time, right?
3 A Uh-huh. (Affirmative)
4 Q And then the last paragraph says Great Alaska Land -- Lawn
5   and Landscaping owns the hydro seeder. The hydro seeder
6   was in use by Titan Enterprises at the time of the
7   accident. And you were pretty positive in that statement
8   that Great Alaska Lawn and Landscaping owned the hydro
9   seeder, correct; that was your statement at the time?
10 A Yeah.
11 Q And you seem less certain today. Tell me why that is.
12 A Well, I mean I -- I owned it, yeah; Great Alaska Lawn,
13   myself.
14 Q Okay.
15 A I mean I'm 100 percent shareholder.
16 Q And you say you owned it because -- because the
17   corporation had been dissolved and so all the assets were
18   yours; is that -- is that your thinking?
19 A Again, I -- you know, I don't know the technical.....
20 Q Okay.
21   MR. FITZGERALD: And I don't think Roger's asking for a
22 legal opinion.
23 Q I'm not asking for a legal opinion.
24 A Yeah.
25 Q I'm just asking.....

Exhibit A
Page 13 of 21 Pages

Computer Matrix, LLC          Phone - 907-243-0668              jpk@gci.net
310 K Street, Suite 200       Fax   907-243-1473              sahile@gci.net

Page 18

1   A   Yeah.

2   Q   .....that you considered that it was yours?

3   A   Yeah.

4   Q   Okay. And then the letter, June 30th, 2003, that's
5       page two and three of this exhibit. That was also
6       prepared by you, wasn't it? Pages two and three,
7       yeah, you've got it.....

8   A   Yeah.

9   Q   .....right there.

10  A   Yes.

11  Q   I don't have a signature on it but -- but there's no
12      question you prepared that?

13  A   Yes.

14  Q   All right. And the second paragraph talks about it
15      was purchased from On No Construction.....

16  A   Uh-huh. (Affirmative)

17  Q   .....in 1995?

18  A   Uh-huh. (Affirmative)

19      MR. FITZGERALD: Wait until he finishes his question.

20  A   Okay.

21      MR. FITZGERALD: All right.

22  Q   The next paragraph talks about a conversation with Art
23      Timm. Who is Art Timm?

24  A   My accountant.

25  Q   And -- and you say he hasn't been associated with my

Exhibit A
Page 14 of 21 Pages

1    entities for the past three years. He'd have no knowledge
2    who owns the hydromulcher. Did he make some statement to
3    the state about who owned it? Is that what you were
4    responding to or do you know?
5  A I'm not sure.
6  Q Okay. And then the next paragraph in that letter, half
7    way down the page, it says as stated before Great Alaska
8    Landscape owns the hydromulcher and has been and continues
9    to loan the hydromulcher to Titan Enterprises. And is
10   that -- is that the status as of the time of the accident?
11      MR. FITZGERALD: And, again, you're not asking for a legal
12 opinion?
13      MR. HOLMES: I'm not asking for a legal opinion.
14 A  Yeah. I mean.....
15 Q  Todd, and I don't.....
16 A  Yes.
17 Q  I don't mean -- again, I'm not asking for -- for legal
18   opinions. But is it that you owned the hydro seeder; you
19   owned Titan Enterprises; you owned Titan Topsoil and that,
20   you know, you used whatever you used -- you needed
21   whenever you needed to do it; I mean is that a fair
22   assumption of how you were handling these things?
23      MR. FLANIGAN: I'm going to object. That calls for a
24 legal conclusion.
25 A  I don't know.

Exhibit  A
Page  15  of  21  Pages

Page 20

1  Q  Okay. There was no formal agreement between Titan
2     Enterprises and -- and you or Great Alaska, right?
3  A  No.
4  Q  Okay. They just -- Titan Enterprises used it when they
5     needed it?
6  A  Correct.
7  Q  Okay.
8                              (Deposition Exhibit 2 marked)
9  Q  I'm not going to ask you about everything in here but if
10    you want to take the time to read the whole thing, we --
11    I'm happy to go off the record and you can do that.
12       MR. FLANIGAN: This says page -- mine starts at page four.
13  Was there a page one through three?
14       MR. HOLMES: There was. This came out of the -- the OSHA
15  -- I didn't -- I didn't bring the first three pages because
16  they didn't relate to Todd.
17       MR. FLANIGAN: Okay.
18       MR. FITZGERALD: Roger, is there a particular page you're
19  going to ask him about or is this -- or should he review the
20  entire thing?
21       MR. FLANIGAN: Does the first three pages indicate who the
22  author of this is?
23       MR. HOLMES: It was I think Scanlon.
24       MR. FLANIGAN: Right. But I mean is -- is that indicated
25  in the first three pages?

Exhibit  A
Page  16  of  21  Pages

Page 23

1  Q  And I think the last two pages deal with the pay periods
2     from the 3rd of May through the date of accident, which I
3     understand was the 5th of June. Let me ask you, first of
4     all, do you recognize these as payroll records of Titan
5     Enterprises and Titan Topsoil?
6  A  Yes.
7  Q  And the last two pages, which are 400,011 and
8     400,012, appear to show that he was working for Titan
9     Enterprises or was being paid by Titan Enterprises at
10    the time of the accident, correct?
11 A  Correct.
12 Q  Okay.
13             (Deposition Exhibit 4 marked)
14 Q  Exhibit 4, I just brought the cover page from the
15    insurance company that -- for Great Divide that we're
16    here to talk about today. And if you look in the
17    upper left hand corner, it has a place called the
18    named insured and mailing address. And it has Titan
19    Enterprises, LLC, d/b/a Titan Topsoil. Do you see
20    that?
21 A  Yeah.
22 Q  Do you know how that happened?
23 A  No.
24 Q  What was it that you.....
25    MR. FITZGERALD: Let me just -- do you understand what

Exhibit __A__
Page __17__ of __21__ Pages

TODD CHRISTIANSON                  10/26/2006         GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                              3:06-CV-00060

Page 26

```
 1         right.....
 2    A    Correct.
 3    Q    .....right?  Okay.  When was the first time you -- you
 4         tumbled to that?
 5    A    After the accident with Kevin.  Probably after reviewing
 6         the -- just after actually looking at the policy.
 7         MR. FITZGERALD:  Okay.  And he's not asking and I don't
 8    want you to provide -- just so we're clear on it, I'm not --
 9    I'm going to instruct you with regard if it's based on
10    conversations between you and I, that that's not what Roger's
11    asking about.
12    Q    No.  But -- okay.  But you've never gone back to your
13         agent and asked him how did this happen?
14    A    No.
15    Q    Or go back to him and say you need to change this; this is
16         wrong?
17    A    No.
18    Q    What -- what was it in -- Mike Dennis, is that -- we
19         decided -- and is that who you dealt with on this?
20    A    Yeah.
21    Q    Okay.  And what was it that you thought you were insuring
22         or you wanted him to insure with this policy?
23    A    My general liability.  I thought my companies, me and my
24         employees, were covered.  I mean covered, everybody.
25    Q    Okay.  You.....
```

Exhibit __A__
Page __18__ of __21__ Pages

Page 28

1   Q   Okay. And was Mike Dennis your agent?
2   A   I believe so.
3   Q   Okay. And who would have a copy of -- of the prior
4       policy? Would.....
5   A   Mike.
6   Q   Okay.
7       MR. FITZGERALD: And just so you know, I do not have any
8       of those materials.
9       MR. HOLMES: Right.
10      MR. FITZGERALD: That wasn't provided to me.
11      MR. HOLMES: Right, right.
12  Q   Just so I -- how far back do you go with Mike?
13  A   Business, personal?
14  Q   Business, CHI; how far back do you go with CHI?
15  A   I think we had -- we were there two years.
16  Q   Okay. And those.....
17  A   Two, maybe three years.
18  Q   Okay. And so this Great Divide policy would have replaced
19      a prior policy, correct, with another company?
20  A   I'm not sure.
21  Q   Well, you've always carried general liability
22      insurance.....
23  A   Correct.
24  Q   ..... haven't you, right? So when one policy expires you
25      ask your agent to get you another policy, either with the

Exhibit  A
Page  19  of  21  Pages

TODD CHRISTIANSON                10/26/2006            GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                 3:06-CV-00060

Page 33

1   did you do after it was dissolved, what sort of
2   business?
3       MR. FLANIGAN: I don't want to interrupt but the word
4   business is a little bit vague. Are you asking him did they --
5   did that company actually have contracts and perform work for
6   people?
7   Q   Yeah, did it conduct any business in the.....
8   A   Yeah.
9   Q   What did it do?
10  A   I believe we did some general business until the end
11      of '02.
12  Q   Okay.
13      MR. FITZGERALD: You misunderstood the question. Listen
14  to his question carefully. He's asking following the
15  involuntary dissolution, which you believe occurred in November
16  '02, he's asking whether Great Alaska Lawn continued to do
17  business. Do you know that or not?
18  A   I don't know.
19  Q   Great Alaska Lawn, did they have any contracts or --
20      or was there any -- were there any fees generated by
21      Great Alaska Lawn and Landscaping after you let it
22      lapse and it was dissolved by the state?
23  A   I'm not sure.
24  Q   Okay. All right. Eleven, at the time of the injury
25      Jones was employed by Titan Enterprises; that's

Exhibit A
Page 20 of 21 Pages

Computer Matrix, LLC          Phone - 907-243-0668            jpk@gci.net
310 K Street, Suite 200       Fax    907-243-1473             sahile@gci.net

Page 34

```
 1           correct, right?
 2    A      Correct.
 3    Q      Twelve, at the time of the injury Great Alaska Lawn
 4           had leased, rented or loaned the hydromulcher to
 5           Titan Enterprises; and is that correct?
 6           MR. FITZGERALD: And to the extent it calls for a legal
 7    opinion, but.....
 8    Q      Right.
 9    A      Yes.
10    Q      Okay. And Titan Enterprises, thirteen, was -- was a
11           corporation incorporated in the state of Alaska, correct?
12    A      Yes.
13    Q      And was in good standing at that point in time, correct?
14    A      Uh-huh. (Affirmative)
15    Q      And still is?
16    A      Yes.
17    Q      And fourteen, the plaintiff again -- I think you said
18           that earlier but Jones was employed by Titan
19           Enterprises and working in the course and scope at
20           the time of his injury, right?
21    A      Yes.
22    Q      Okay.
23           MR. HOLMES: Let's go off the record for a minute. Let me
24    look at my notes.
25           (Off record)
```

Exhibit ___A___
Page __21__ of __21__ Pages