IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

GREAT DIVIDE INSURANCE )
COMPANY, )
 )
      Plaintiff, )
 )
v. )
 )
TODD CHRISTIANSON, and )
d/b/a Great Alaska Lawn )
and Landscaping, Inc.; and )
Keith Jones, )
 )
      Defendants. )
_____)

Case No. 3:06-cv-00060 TMB

DEPOSITION OF MICHAEL W. DENNIS

November 16, 2006

APPEARANCES:

   FOR THE PLAINTIFF:       MR. MICHAEL W. FLANIGAN
                              Walther & Flanigan
                              Attorneys at Law
                              1029 West Third Avenue
                               Suite 250
                              Anchorage, Alaska 99501
                              (907) 279-9999

   FOR DEFENDANT CHRISTIANSON:   MR. KEVIN T. FITZGERALD
                              Ingaldson, Maassen & Fitzgerald
                              Attorneys at Law
                              813 West 3rd Avenue
                              Anchorage, Alaska  99501
                              (907) 258-8751

Exhibit B
Page 1 of 7 Pages

Page 5

1  Q   Have you ever had your deposition taken before?
2  A   Yes.
3  Q   Okay. I -- I won't then go through the normal rules.
4      But if you don't understand a question, please have
5      me rephrase it because I'll -- I'll consider that you
6      have understood the question if -- if you answer it.
7      Okay?
8  A   (No audible response)
9  Q   And another thing, because this is being recorded you have
10     to.....
11 A   Yes.
12 Q   .....answer audibly to all the questions. Can you just
13     tell me how long you've worked for CHI?
14 A   May of '91.
15 Q   And is CHI a broker, insurance broker?
16 A   Yes.
17 Q   And how long have you been in that line of business?
18 A   May of '91.
19 Q   Did you take any special training or receive any special
20     training prior to the time that you started with CHI?
21 A   No.
22 Q   Okay. And after you began with CHI did you go
23     through any kind of training seminars or classes with
24     regard.....
25 A   Yes.

Exhibit ___B___
Page __2__ of __7__ Pages

MICHAEL DENNIS                    11/16/2006           GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                                3:06-CV-00060

Page 9

```
 1         independently?
 2    A    I -- I still -- the lines are crossed there for me
 3         between what you mean by seek to independently
 4         or.....
 5    Q    Has there -- let me ask it this way, has there ever been a
 6         situation in which you've attempted to place insurance for
 7         a customer and the typical insurers that CHI would employ
 8         couldn't be used?
 9    A    Yes.
10    Q    Okay.  And is that a relatively rare occasion that that --
11         that occurs?
12    A    Yes.
13    Q    And has it -- on those particular occasions has it
14         been predominantly because the client didn't want to
15         place insurance there or that the insurance company
16         couldn't place the insurance with the -- or couldn't
17         insure the client?
18    A    The insurance company couldn't or wouldn't.
19    Q    Right, okay.  Is there ever a situation where among the
20         pool of insurers that CHI places insurance with that you
21         do comparative shopping among the insurers?
22    A    Yes.
23    Q    In this particular case I see that CHI placed
24         insurance for Todd Christianson and his company,
25         specifically Titan Enterprises, LLC, and Titan
```

Exhibit __B__
Page __3__ of __7__ Pages

Computer Matrix, LLC              Phone - 907-243-0668              jpk@gci.net
310 K Street, Suite 200           Fax    907-243-1473               sahile@gci.net

MICHAEL DENNIS                    11/16/2006            GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                              3:06-CV-00060

Page 10

| | | |
|---|---|---|
| 1 | | Topsoil; is that right? |
| 2 | A | Yes. |
| 3 | Q | And that the insurance that was placed was worker's comp, |
| 4 | | auto and GL? |
| 5 | A | Yes. |
| 6 | Q | Do you recall whether there was any comparative shopping |
| 7 | | at the time that you became involved, any comparative |
| 8 | | shopping of any insurers in order to place insurance for |
| 9 | | Christianson and his companies? |
| 10 | A | No. |
| 11 | Q | Okay.  Now you indicated that -- and I see from the |
| 12 | | documents and -- and I might just add that when Mr. |
| 13 | | Houston was here he indicated that -- that there were |
| 14 | | some additional documents that needed to be produced |
| 15 | | and -- and since he appeared there's a stack of |
| 16 | | probably 15 hundred or more pages of documents.  If |
| 17 | | you know, are there additional documents that aren't |
| 18 | | included in -- in those documents that have been |
| 19 | | provided to counsel? |
| 20 | A | I'm not aware. |
| 21 | Q | Okay.  I -- I notice that there is a relationship |
| 22 | | with Superior Underwriters.  And can you describe |
| 23 | | generally what -- what the purpose of that |
| 24 | | relationship is and what that relationship does? |
| 25 | A | Yes.  Superior is a wholesale broker and we present |

Exhibit __B__
Page __4__ of __7__ Pages

Computer Matrix, LLC           Phone - 907-243-0668          jpk@gci.net
310 K Street, Suite 200        Fax    907-243-1473           sahile@gci.net

Page 12

| | | |
|---|---|---|
| 1 | Q | Okay. And in this particular case when did the -- |
| 2 | | the relationship begin between you and Christianson |
| 3 | | and his companies, if you remember? |
| 4 | A | Sometime in '03. |
| 5 | Q | And prior to that time you had had no relationship with |
| 6 | | Christianson and/or his companies either with another |
| 7 | | entity or individually on your own part? |
| 8 | A | No. |
| 9 | Q | And how is it that -- if you recall, how is it -- and I |
| 10 | | know this is some years ago. How is it that the business |
| 11 | | was brought to you? |
| 12 | A | I believe Todd called. |
| 13 | Q | Okay. And do you recall meeting with Todd in your office |
| 14 | | or was it confined at least preliminarily to phone calls? |
| 15 | A | I don't remember. |
| 16 | Q | Speak to anybody else at -- with his companies, if you |
| 17 | | recall? |
| 18 | A | No. |
| 19 | Q | Pauline Jackson or Kevin Thompson or..... |
| 20 | A | I have had conversations with them but prior to that |
| 21 | | I don't remember. |
| 22 | Q | Okay. But the conversations you may have had was after |
| 23 | | the initial kind of relationship had begun between you and |
| 24 | | Christianson and his companies? |
| 25 | A | I believe so. |

Exhibit __B__
Page __5__ of __7__ Pages

Page 30

1  Q  And I notice in the -- about two-thirds of the way
2     down the page there's an indication with regard to
3     exclusions.
4  A  Yes.
5  Q  And are those exclusions that the -- the client
6     requests or are those exclusions that Superior
7     Underwriters dictates?
8  A  Superior would send those exclusions. They may be
9     dictated by the carrier, not Superior.
10 Q  Okay. But in any event with regard to the source, it's --
11    it's not the client saying, hey, I don't want that.....
12 A  Correct.
13 Q  .....coverage?
14 A  Correct.
15 Q  And with regard to the exclusions, it includes an
16    exclusion for employee exclusion; do you see that?
17 A  Yes.
18 Q  What's your understanding of employee exclusion
19    coverage?
20 A  Employees aren't covered under general liability.
21 Q  Okay. And do you recall whether you had any specific
22    conversation with Mr. Christianson or any people in his
23    office concerning that particular exclusion that appears
24    to have been dictated by the policy he got?
25 A  No.

Exhibit __B__
Page __6__ of __7__ Pages

Page 43

```
 1   Q   Because in the CGL it talks about property damage
 2       insurance.  Let me see if I can find that.
 3   A   Right.  Usually in reference to property damage, property
 4       of others that you damage.....
 5   Q   Okay.
 6   A   .....when you're talking about general liability.
 7   Q   How would -- how would the -- what was your understanding
 8       of how the auto insurance would plug into the CGL?  I mean
 9       how would the two fit together in terms of -- of vehicles?
10       Because you -- you guys bought him -- you obtained the
11       auto insurance or the vehicle insurance through Cascade
12       Insurance Company I think?
13   A   Yes.
14   Q   So I mean I've seen a lot of CGL's where the -- where the
15       auto is included in the CGL.  Was there some reason it was
16       broke apart here?
17   A   To my knowledge the auto is never covered under CGL.
18       It -- you can cover -- under the general liability
19       policy you can cover off-road equipment, equipment
20       that's not licensed for road use.  A bulldozer, CAT,
21       excavator, those are all covered under a general
22       liability policy.  But an auto policy covers vehicles
23       licensed for road use.
24   Q   Okay.  Maybe I'm thinking of a package policy, where
25       you've got.....
```

Exhibit ___B___
Page __7__ of __7__ Pages