Kevin T. Fitzgerald, Esquire
ABA No. 8711085
Ingaldson, Maassen &
Fitzgerald, P.C.
813 West Third Avenue
Anchorage, Alaska 99501
(907) 258-8750
(907) 258-8751/Facsimile
E-mail: kevin@impc-law.com


Attorneys for Defendant Christianson

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

GREAT DIVIDE INSURANCE )
COMPANY, )
 )  No. 3:06-cv-00060 TMB
            Plaintiff, )
 )
        v. )
 )
Todd Christianson, and d/b/a )
Great Alaska Lawn and )
Landscaping, Inc.; and )
Keith Jones, )
 )
            Defendants. )
_____ )

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Comes now the Defendants by and through Ingaldson, Maassen and Fitzgerald, P.C. and hereby oppose Plaintiff's Motion for Summary Judgment. This opposition is supported by the following memorandum of law and the accompanying exhibits.

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
907) 258-8750
X: (907) 258-
8751

**Introduction**

Great Divide requests a judgment declaring that it has no duty under policy GC 240519 to defend or indemnify its insured Christianson against claims relating to injuries received by Keith Jones on June 5, 2003. Jones, an employee of Titan Enterprises owned by Christianson, had his right leg amputated below the knee after it was caught between the mixing auger and bun of a hydro-mulcher (also referred to as a hydroseeder). Christianson contends that Great Divide is obligated under their policy to defend and indemnify him for any liability in the state tort action. See Keith Jones v. Bowie Industries, et.al., 3ANS-04-109581 CI. Complaint. Ex. 1.

**1.    Facts and Proceedings.**

Christianson purchased three policies from insurance agent Michael Dennis. The policies included a worker's compensation policy, an automobile policy, and a commercial general liability (CGL) policy through Great Divide referencing and including Christianson's landscaping businesses. Policy, Ex. 2.  On June 5, 2003 Keith Jones, who was an employee of Christianson's landscaping company, voluntarily placed his leg into a hydro-mulcher while the engine was running in order to use his foot to push debris further and more forcefully into the chopper blades.

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
· W. 3rd Avenue
Anchorage,
Alaska
99501-2001
'07) 258-8750
.X: (907) 258-
8751

His leg became entangled in the chopper blades and he received injuries to his foot and leg. He filed a worker's compensation claim against Titan Topsoil for whom he was working at the time. That matter was been resolved.

Jones also filed suit for a separate cause of action Alaska State Superior Court. 3ANS-04-109581 CI. Christianson tendered defense to his insurance company, Great Divide, pursuant to the terms of the CGL. The company declined to defend, and then filed for declaratory action in this case. Thus, the terms of the CGL are of primary issue in the motion for summary judgment.

**1. Standards of Review.**

The interpretation of contract language is a question of law. The court looks to four factors when interpreting insurance contracts: (1) the language of the disputed policy provision; (2) the language of other provisions in the policy; (3) relevant extrinsic evidence; and (4) case law interpreting similar provisions. Dugan v. Atlanta Casualty Companies, 113 P.3d 652 (Alaska 2005). Insurance contracts must be construed so as to provide the coverage a layman reasonably expected given his non-professional interpretation of the policy's terms. Consideration of the individual facts of a case is proper under this "reasonable

ɴGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
ʹ07) 258-8750
.X: (907) 258-
8751

expectations" test. Id. If the terms of a policy are reasonably subject to differing opinions based on the parties' expectations, the court must adopt the insured's interpretation. Id. "[P]rovisions of coverage should be construed broadly while exclusions are interpreted narrowly against the insured." Starry v. Horace Mann Ins. Co., 649 P.2d 937, 939 (Alaska 1982) quoting Hahn v. Alaska Title Guar. Co., 557 P.2d 143, 145 (Alaska 1976).Ambiguities in the meaning of insurance contracts are resolved against the insurer. Feyes v. Alaska Ins. Co., Inc., 984 P.2d at 519, 523 (Alaska 1999). Moreover, to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y., 241 A.D.2d 66, 671 N.Y.S.2d 66, 68-69 (N.Y. App. Div. 1998)

   Alaska follows the majority rule that the duty to defend is determined by the allegations of the complaint.  Feyes,

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
07) 258-8750
X: (907) 258-
8751

<u>supra</u>. This is also known as the "four corners of the complaint test". As stated in <u>Danek v. Hommer</u>, 105 A.2d. 677 (1954):

> The complaint should be laid along side the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured.

The insurer's duty to defend and its obligation to indemnify are separate and distinct contractual elements. The insurer's duty to defend is broader than its duty to provide coverage. The insurer may therefore be obligated to defend even where it has no ultimate liability under the policy. 'The duty to defend arises 'if the complaint on its face alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy.' 'Even if the complaint does not contain such allegations, the insurer has a duty to defend if facts underlying the complaint are within or potentially within, the policy coverage and are known or reasonably ascertainable by the insurer.'" <u>Feyes</u>, 984 P.2d at 523. Thus, the first question is whether the insurer "can show that the 'allegations of the complaint are solely and entirely within the policy exclusions" <u>Brooklyn Law School v. Aetna Casualty &Sur. Co.</u>, 849 F.2d. 788, 789 (2nd Cir. 1988). Otherwise, the duty to defend is triggered and declaratory relief releasing Great

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
07) 258-8750
X: (907) 258-
8751

Divide from its contractual obligations is inappropriate. Responsibility for coverage is a secondary issue.

1.  **The court must reject Great Divide's argument coverage is excluded under the auto exception because this incident involves the use of mobile equipment which is specifically covered under the CGL. Christianson's interpretation that the automobile exclusion would not apply to landscaping equipment is reasonable because it is consistent with judicial interpretation of the terms, the sales agent's interpretation and the idea that there is a distinction between automobiles which would be covered under the automobile policy and "mobile equipment" which was intended to be covered under the general liability policy.**

Great Divide insured Christianson under a commercial general liability policy with a $ 1,000,000 personal injury coverage limit. Great Divide's standard policy includes several exclusions barring liability for bodily injury and property damage. Specifically, policy section 2(g) excluded recovery for "bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured." However, Section 2(g) also includes categories of losses not subject to the general prohibition on auto, aircraft, and watercraft liability. Those inclusions cover bodily injury or property damage resulting from actions involving "mobile equipment" because the policy specifically defines "auto" as "a

ᴺGALDSON,
ᴵAASSEN &
ᵀZGERALD,
P.C.
Lawyers
W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
ⁱ07) 258-8750
.X: (907) 258-
8751

land motor vehicle, trailer or semi-trailer designed for travel on public roads but does not include 'mobile equipment.'" Section 5.2 Definitions, page 12 of 16 of the policy.

The term "mobile equipment" is defined in Section 5.12 as follows:

"Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

ʌGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
07) 258-8750
X: (907) 258-
8751

f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above *maintained primarily for purposes other than the transportation of persons or cargo.*

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment (emphasis added).

It is clear that general liability policies which exclude automobile coverage should not be transformed into automobile insurance policies simply because they cover losses incidentally involving automobiles. However, the 9th Circuit has held that where the CGL is the primary policy for even self-propelled mobile equipment, an insurance company cannot rely on the automobile exclusion to void coverage for incidents arising from use of the equipment. <u>Bills v. United States Fed. & Guaranty Co.</u>, 280 F.3d 1231 (9th Cir. 2002). In that case the court held

ɴGALDSON,
ɪAASSEN &
TZGERALD,
P.C.
Lawyers
· W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
07) 258-8750
X: (907) 258-
8751

as a matter of law that a self-propelled front end loader being operated on the streets during the course of the employee's duties was not excluded from GLC coverage. See also Castillo v. Miller Mutual Fire Ins. 25 P.3d 13, 16 (Ariz. App. 2001) (a Loral is mobile equipment covered by the CGL). CGL are intended to and do provide coverage where the incident involves "mobile equipment". Id.

The piece of equipment in this case clearly fits under the inclusion as a "vehicle [] . . . maintained primarily for purposes other than the transportation of persons or cargo." As such it is covered by the CGL. The language of the policy, the manifest intent of the parties, Alaska statutory definitions, and case law from other jurisdictions interpreting this language all lead to a finding of coverage.

The unpublished decision in Twin City Fire Ins. Co. v. Second Chance Body Armor, Inc., 2006 Mich. App. LEXIS 1735 (Mich. Ct. App. May 23, 2006) clearly demonstrates the distinction between auto coverage and CGL coverage for mobile equipment. The decision is attached for the court's convenience, although it is cited for persuasive as opposed to precedential value. Ex. 3. See McCoy v. State, 80 P.3d 737 (Alaska 2002) permitting citation to unpublished opinions for such purposes in

ᴺGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
ʹ07) 258-8750
.X: (907) 258-
8751

Alaskan courts). In <u>Twin City Fire</u> the court interpreting identical definitions found that where a trailer had been converted to a fireworks launching pad it became mobile equipment rather than an automobile because it was not used primarily to transport people or goods and its presence on a roadway would be incidental to its primary purpose. The court should reject Great Divide's argument that the hydro-seeder in this case is an "auto" for the same reasons.

The parties' intent also requires this conclusion. The intent of the parties in this case is illuminated by the structure of Christianson's policies. He did not purchase the CGL in a void. The relevant extrinsic evidence shows that Christianson purchased automobile coverage and worker's compensation coverage at the same time he purchased the CGL. Michael Dennis Deposition at 9-10. Ex. 4. The fact that his company does landscaping is identified in the application for insurance and attachments to the policy. Ex. 5; Dennis Deposition at 15-16, 21. Christianson's identified needs coupled with his obvious desire to obtain full coverage for all potential problems clearly established his intent and anticipation to obtain coverage for equipment used in his landscaping business whoever sued him.

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
907) 258-8750
X: (907) 258-
8751

"Mobile equipment" is excluded from automobile coverage but is included under general coverage. This labeling demonstrates the intent of the parties to obtain full coverage for Christianson, some vehicles under the auto policy and some under the CGL. The hydro seeder must be considered landscaping equipment which qualifies as mobile equipment under the terms of the CGL.

This interpretation is consistent with the sales agent's understanding of coverage. At his deposition Dennis was asked to explain the interplay between the automobile coverage policy and the GLC policy he concurrently provided to Christianson. He stated that while automobiles were not covered by the CGL, the CGL was intended to apply to equipment not licensed for road use. That is, bulldozers, excavators, CATs and the like were intended to be covered by the CGL. Dennis Deposition at 43. All of those are items of landscaping equipment that may be incidentally upon the roadway. In that regard they are identical to the hydro seeder. The hydro seeder like those other pieces of equipment is not designed for the transportation of persons or property. Its presence on a roadway is only incidental to the goal of putting it into active work at another place. In addition, the hydro seeder, if it qualifies as any type of motor

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(07) 258-8750
.X: (907) 258-
8751

vehicle, would be mobile equipment rather than an automobile pursuant to the controlling Alaskan statutory and regulatory scheme. See AS 28.10.011 (excluding such vehicles from registration).

Lastly, it would be repugnant as a matter of public policy to allow the insurance industry to sell intersecting policies designed to cancel one another out so that the insured receives no coverage when an obvious intent to do so is manifested. Great Divide's self-serving suggested interpretation of the contract terms should be rejected.

There is nothing unfair to Great Divide in this approach. Great Divide was specifically informed of the nature of Christianson's work and that coverage for use of hydroseeders was sought. This was clear at the application process.

Q: Generally what-what was it that was described to you?

A: They were doing landscaping and—and manufacturing topsoil.

. . .

Q: Okay. And was it your understanding that-that the business that was described to you by Christianson employed or used a hydroseeder?

A: Yes.

ᵌGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
ʲ07) 258-8750
X: (907) 258-
8751

. . .

Q:    And it indicates, landscaping gardening, sand or
gravel digging, what was the purpose of those listing-that—
those schedule of hazards in those codes?

A:    That's what the insured, client, insured, would have
told us that that's what they were doing.

Dennis Deposition at 15-16.

In    addition,    during    the    applicable    policy    period,
Christianson on behalf of Titan added a number of additional
insureds to assure that the landscaping and heavy equipment work
provided by Titan even through other entities would receive
coverage. Ex. 6. Great Divide understood the nature of the
business which it was insuring and that coverage for equipment
like the hydromulcher was specifically bargained for. The court
should    reject    Great    Divide's    attempts    to    rescind    its
obligations.

**II.        The court must reject Great Divide's argument
that Christianson is not an insured under the
policy because the policy specifically provides
for his individual coverage.**

Christianson is individually covered under the policy.  On
the Commercial Insurance Application form submitted by Titan
Enterprises to Great Divide on March 25, 2003, Titan is
described as a limited liability partnership dba Titan Top Soil.

ʀGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(07) 258-8750
.X: (907) 258-
8751

Ex. 5. The application clearly announced that the business included landscaping, sand and gravel work, and digging. Id. Under the contract definitions contained at Section II (1) (a)-(e) defining insureds the controlling section states:

> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

Policy Section I (1) ((a)-(e). See also Simmons v. Ins. Co. Of North America, 17 P.3d 56, 63 (2001) (In general where an insurance company names a partnership as the insured, coverage extends to the individuals comprising the partnership.) On the face of the policy, Christianson is entitled to defense. Great Divides' argument that he is not an insured is non-persuasive.

Notably the limiting phrase "only with respect to the conduct of your business" which appears in Section II (a), (b), (d), and (e) does not modify the first sentence of II(c) which grants Christianson his coverage. Generally, distinctions in contract language are understood to have import. A narrow interpretation of the contract would lead to the conclusion that Christianson received broader coverage then simply for conduct of his business. However, this issue need not be explored because at a minimum under

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
07) 258-8750
X: (907) 258-
8751

the contract, Christianson had insurance at least for all aspects relation to the conduct of business of Titan Topsoil. Section II (a)-(e).See Policy.

The Alaska supreme court has previously held that a lay person would reasonably expect that a comprehensive general liability policy which covered the premises and operations of a grocery stand extends to all risks which arise from "necessary and incidental operations" of the business, including loading and unloading from another related business owned by the same individual. <u>Hall v. Fireman's Fund</u>, 731 P.2d 577, 580 (Alaska 1987). In an identical manner, a business person obtaining comprehensive commercial general liability coverage would reasonably expect that coverage for the conduct of his business includes "necessary and incidental operations" to the "conduct" of that business.

In this case Christianson testified that Great Lawn was a landscaping company previously owned by him.  Great Lawn had ceased to exist as a separate business entity. The hydro-seeder had either been loaned or otherwise transferred from Great Lawn or Christianson's personal assets to Titan Topsoil. Christianson Deposition at 10-14.

ʌGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
. W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
'07) 258-8750
.X: (907) 258-
8751

Ex.7. Obtaining and using landscaping equipment from a related business or the owner personally must be considered "a necessary and incidental operation" of the conduct of business for Titan Topsoil. Thus, pursuant to the decision in Hall, the CGL in this case includes coverage for this event.

III.    **The court should reject Great Divide's argument that the Worker's Compensation Exclusion releases Great Divide from its contractual obligation to defend and indemnify because the claims in Jones' complaint do not involve actions necessarily covered by Alaska's worker's compensation scheme. Thus, the coverage contained in the CGL was intended to and does cover Jones' claim.**

A.    **The Policy language.**

The insurance contract provided that employees were generally covered insureds for acts within the scope of their employment or while performing duties related to the conduct of business. Section II Who is an Insured? II 2 (a). Page 9 of 16 of the Policy. The scope of coverage for bodily injury to employees stated the insurance applied to occurrences that took place in the coverage territory and during the policy period. 1((b) (1) and (2). Page 1 of 16 of the contract. "Bodily injury" was defined as "bodily injury, sickness or disease

ᵥGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
'07) 258-8750
X: (907) 258-
8751

sustained by a person including death resulting from any of these at any time". Section 3. The general coverage established by the policy was limited by Exclusions including one that insurance "does not apply" to "any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law". Exclusions 2(d). Page 2 of 16 of the Policy.

The policy does not have an exclusion for product's liability suits. See pages 9 of 16 of the policy.

**B. Legal Argument.**

**Exclusion (d), the worker's compensation exclusion, does not excuse Great Divide from defense or coverage because Jones has not sued Christianson for claims necessarily covered by Alaska's worker's compensation statutory scheme.**

**i.    General rules of law.**

During the first half of the 20th Century, worker's compensation laws were enacted in all 50 of the United States. Such laws generally provide that an employer is liable to its employees, regardless of fault, for injuries arising out of and in the course of their employment. This no fault legislation affords the exclusive remedy for employees or dependents against employers for injuries arising in the court of employment and the employer is spared the possibility of civil liability at

ᴺGALDSON,
ᴵAASSEN &
ᵀZGERALD,
P.C.
Lawyers
· W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
·07) 258-8750
.X: (907) 258-
8751

trial. AS 23.30.055. The exclusion in the original policy for bodily injury covered by a workers protections statutory scheme is a fairly common one included in such policies in recognition of the exclusive remedy such systems are designed to accomplish. E.g. Wagar v. United Fire and Casualty Co., 796 P.2d 72 (Colo. App. 1990); Western Farm bureau Mut. Ins. Co. v. Barela, 441 P.2d 347 (N.M. 1968); Tri-Star Const. Inc. v. Columbia Casualty Co./CAN, 692 P.2d 899 (Wash. 1984).

The intent of this exclusion is to avoid duplication of coverage provided under Worker's Compensation and CGL. Id. Accordingly, any interpretation of the exclusion in the CGL that bars coverage for claims not covered by the Worker's Compensation policy would create a gap in coverage surely not intended by the policy holder. Thus, courts have routinely found such a result would deny coverage erroneously and held that where the employee suit does not fall within the parameters of statutory remedies for worker's compensation, the insurer's duty to defend is triggered. Institute for Shipboard Educ. V. Cigna Worldwide Ins. Co. 22 F.3d 414, 119 (2nd Cir. N.Y. 1994); Jackson County Hosp v. Alabama Hosp. Assn. Trust, 619 So. 2d 1369, 1371 (Ala. 1993)( A claim for retaliatory discharge by an employee who was allegedly fired for filing a worker's compensation claim

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
907) 258-8750
.X: (907) 258-
8751

was in the nature of a traditional tort even though the action arose from the worker's compensation context. Accordingly, the claim did not "arise under" worker's compensation law for purposes of the employers' CGL policy, and the insurer had to indemnify the employer); United Pac.Ins.Co. v. First Interstate Banc-Systems, 664 F. Supp. 1390, 1394-95 (D. Mont. 1987) *clarified on reconsideration* 690 F.Supp. 917 (D. Mont. 1988)(Exclusion for worker's compensation did not preclude coverage where employee sued for emotional distress damages for wrongful discharge where such suits were not subject to resolution under worker's compensation scheme); Guidry v. Orgeron, 525 So. 2d 677, 680 (La. App. 1988) (policy excluded coverage only as to employee suits covered by workers compensation; since statutory scheme did not control the claim brought, the exclusion was inapplicable).

**ii.  Application to this case.**

The four corners of the complaint show that Jones has sued two entities: Bowie Industries, Inc. and Todd Christianson, individually and dba Great Alaska Lawn and Landscaping. Bowie is sued under a strict liability for product design and defect as well as a negligence products liability theory. Great Alaska Lawn and Christianson are sued under a strict liability theory

ʋGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
ⁱ07) 258-8750
.X: (907) 258-
8751

for passing the defective product into the stream of commerce, for negligently allowing the defective product into the stream of commerce, for negligent maintenance and/or modifications, and for failure to warn. Complaint. Under the applicable four-corners test, the court must conclude that the employment exclusion does not excuse Great Divide because the tort claims filed by Jones do not necessarily fall within Alaska's statutory framework for exclusive remedy of worker's compensation. AS 23.30.055; see also Himschoot v. Shanley, 908 P.2d 1035, 1041 (Alaska 1996) (holding that presumption was inapplicable in case in which injured worker sued in tort). Importantly, the policy does not contain an exclusion for product's liability issues which is the cornerstone of Jones' claims. Thus, the court should conclude that the complaint contains allegations that are within or potentially within the policy coverage, and deny the motion for summary judgment. Feyes, 984 P.2d at 523.[1]

In the alternative, the court should determine that the contractual language is at best ambiguous and construe it against Great Divide. Feyes, 984 P.2d at 523. The exclusion states it applies to "any obligation of the insured under a

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(07) 258-8750
X: (907) 258-
8751

---

[1] Great Divide must certainly defend the suit. If its theory is correct that Jones' claims should be resolved by application of the Alaska Worker's Compensation Act, AS 23.30.005-400, its defense will not be unduly burdensome because the claims will not survive a motion for summary judgment in state court.

workers' compensation, disability benefits or unemployment compensation law or any similar law". Exclusions 2(d).Page 2 of 16 of the Policy. The Alaska Worker's Compensation Board has not obligated Christianson regarding the claims currently raised by Jones. Christianson's interpretation of the exclusion not to apply absent a worker's compensation action resolving the issue is a reasonable non-professional interpretation. Christianson's expectation that when he concurrently purchased the worker's compensation policy and the CGL no gaps in coverage would exist is also reasonable. E.g. Dugan, supra. The court should enforce that reasonable expectation and deny the motion for summary judgment. Id.

   iii.   **The court should reject Great Divide's argument
          that the Employer's Liability exclusion releases
          Great Divide from its contractual obligation
          to defend and indemnify because that exclusion can
          only be enforced where separate Employer
          Liability policies are offered for sale. Since
          Alaska is a jurisdiction where such policies are
          not offered and Christianson had a reasonable
          expectation that he had obtained complete
          coverage for his operations, the exclusion cannot
          be enforced.**

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
907) 258-8750
X: (907) 258-
8751

**A    The Policy language.**

The expansive coverage established by the policy was allegedly limited by an exclusion for "Employer's Liability". Section II (e). Page 2 of 16 of the Contract. The Employer Liability exclusion, unlike the Worker's Compensation exclusion, is not well established. No court has found it to be enforceable in Alaska. The ostensible purpose of this exclusion is to prevent CGL policies from becoming de facto Employer Liability policies where such policies are separately offered for sale. However, a separate Employer Liability policy was not offered to Christianson. In fact, such policies are not available in Alaska.

Q:    And I notice in the – about two-thirds of the way down the page there's an indication with regard to exclusions.

A:    Yes.

Q:    And are those exclusions that the client requests or are those exclusions that Superior Underwriters dictates?

A:    Superior would send those exclusions.  They may be dictated by the carrier, not Superior.

Q:    Okay.  But in any event with regard to the source, it's – it's not the client saying hey, I don't want that....

ꞏGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
· W. 3rd Avenue
Anchorage,
Alaska
99501-2001
·07) 258-8750
.X: (907) 258-
8751

A:   Correct.

Q:   ....coverage?

A:   Correct.

Q:   And with regard to the exclusions, it includes an exclusion for employee exclusion; do you see that?

A:   Yes.

Q:   What's your understanding of employee exclusion coverage?

A:   Employees aren't covered under general liability.

Q:   Okay.  And do you recall whether you had any specific conversation with Mr. Christianson or any people in his office concerning that particular exclusion that appears to have been dictated by the policy he got?

A:   No.

Q:   Okay.  Would there have been any reason for you to discuss that with Mr. Christianson?

A:   No.

Q:   And there's another exclusion for employment related practices; do you see that?

A:   Yes.

Q:   And - and what's that based on your experience?

GALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
. W. 3rd Avenue
Anchorage,
Alaska
99501-2001
07) 258-8750
X: (907) 258-
8751

A:   Employment related practices is harassment,

discrimination, wrongful termination.

Q:   And, again, the same series of questions, do you

recall having any specific conversation with Mr.

Christianson or members of - of his office or staff

concerning that particular exclusion?

A:   No.

Q:   Do you know - backtracking here to employee exclusion,

do you know whether - let's say I'm a general contractor.

I'm doing, you know, landscaping and sand and gravel

digging and I want a general liability policy.  I come in

to see you with regard to the applicable or the appropriate

coverages and I - I get back this Superior Underwriters

exclusion with regard to employee exclusion.  Could I buy

independently employee exclusion coverage?

A:   Not that I'm aware of.

Q:   At least not in this jurisdiction?

A:   Correct.

Dennis Deposition at 30-31.

    Christianson purchased worker's compensation, automobile

coverage, and the CGL policy at the same time. The broker

GALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
07) 258-8750
X: (907) 258-
8751

Great Divide v. Christianson
Case 3:06-cv-00060 TMB
Opposition to Motion for Summary Judgment
                    Page 24 of 27

testified he understood that Christianson intended and sought to cover all phases of his business operation.

Q:   And I take it that—that when Christianson contacted you about placing insurance on his behalf with carriers that what his motivation, if you can speak to that at all, would be that his operation would be covered?

A:   I believe that it was in order for him to obtain work he had to have the coverage, yes.

Q:   Okay. And that was the reason why he was contacting you to place insurance with carriers so that that what, what he was doing would be covered?

A:    Yes.

Dennis Deposition at 16.

     Dennis also testified he did not discuss this exclusion with Christianson. Id.

     The court should conclude given this backdrop that the purported exclusion cannot be enforced given the policy purchaser's intent to obtain full coverage for his operations, the fact that it was represented to him that he had obtained such coverage, and the fact that the CGL is the only mechanisms in Alaska to do so. Public policy is violated if an insurance company can through an exclusion of adhesion sell a policy

ʀGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
· W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
·07) 258-8750
·X: (907) 258-
8751

designed to cancel out the coverage specifically sought by the insured. It is reasonable to prohibit such gaps in coverage.

**Conclusion.**

For the reasons contained herein the court should conclude that Great Divide has not demonstrated that the policy contains such clear exclusions of coverage that a reasonable person would understand that he was receiving essentially no coverage for occurrences of this type, especially where the surrounding circumstances manifest a clear intent by the insurer to cover himself for all claims, including those arising from employees either through the worker's compensation package purchased or through the CGL purchased as an adjunct. The motion for summary judgment should be denied.

Dated at Anchorage, Alaska January 17, 2007.

FITZGERALD, P.C.
Attorneys for Defendant
Christianson


s/Kevin T. Fitzgerald
ABA No. 8711085
813 West Third Avenue
Anchorage, AK  99501
Fax: (907) 258-8751
E-mail: kevin@impc-law.com

·NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
. W. 3rd Avenue
Anchorage,
Alaska
99501-2001
'07) 258-8750
.X: (907) 258-
8751

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2007,
a copy of the foregoing was served
electronically on:

Roger F. Holmes, Esquire
Michael Flanigan, Esquire


  s/Kevin T. Fitzgerald
F:\W\7501-5\Federal Pleadings\opposition to motion to summary judgment coverage.doc

NGALDSON,
IAASSEN &
TZGERALD,
P.C.
Lawyers
W. 3rd Avenue
Anchorage,
Alaska
99501-2001
'07) 258-8750
X: (907) 258-
8751

Great Divide v. Christianson
Case 3:06-cv-00060 TMB
Opposition to Motion for Summary Judgment