*2006 Mich. App. LEXIS 1735, \**

**TWIN CITY FIRE** INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY, Plaintiffs-Appellants, v **SECOND CHANCE BODY** ARMOR, INC., GARY E. KRESS, BRYAN R. KRESS, FRANCES LADI, LAURA LEE WILSON, SHANNON WILSON, MARK SOKOLOWSKI, LISA SOKOLOWSKI, CHARLES CRADDUCK, DIANE CRADDUCK, DEBORAH A. YAGER, Individually and as Personal Representative of the Estate of MARK R. YAGER, Deceased, MEGAN YAGER, MARK A. YAGER, KATIE YAGER, EMILY YAGER, MARCELLA YAGER, TADEUSZ DOBROWOLSKI, JEANETTE DOBROWOLSKI, CHRISTOPHER DOBROWOLSKI, ADAM DOBROWOLSKI, KYLE DOBROWOLSKI, RICHARD DAVIS, MICHAEL J. JAYE, CURTIS GLENN CRAWFORD, LAWRENCE GRISE, FIREWORKS NORTH, INC., JAMES SNIDER, and WINIFRED SNIDER, Defendants-Appellees. COLUMBIA CASUALTY COMPANY, Plaintiff-Appellant, FRANCES LADI, LAURA LEE WILSON, SHANNON WILSON, MARK SOKOLOWSKI, LISA SOKOLOWSKI, CHARLES CRADDUCK, DIANE CRADDUCK, DEBRA A. YAGER, Individually and as Personal Representative of the Estate of MARK R. YAGER, Deceased, MEAGAN YAGER, MARK A. YAGER, KATI YAGER, EMILY YAGER, MARCELLA YAGER TAEUSZ DOBROWOLSKI, JEANETTE DOBROWOLSKI, CHRISTOPHER DOBROWOLSKI, ADAM DOBROWOSKI, KYLE DOBROWOLSKI, SECOND CHANGE BODY ARMOR, INC., RICHARD DAVIS, MICHAEL J. JAYE, CURTIS GLENN CRAWFORD, and LAWRENCE GRICE, Defendants-Appellees.

No. 265697, No. 266102

COURT OF APPEALS OF MICHIGAN

2006 Mich. App. LEXIS 1735

May 23, 2006, Decided

**NOTICE:** [\*1] THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**PRIOR HISTORY:** Charlevoix Circuit Court. LC No. 00-067619-NO, LC No. 00-032819-NO.

**DISPOSITION:** Affirmed.

**CORE TERMS:** trailer, insured, mobile, coverage, fireworks, underlying tort, genuine issue of material fact, launching, discovery, products-completed, preclude coverage, misrepresentation, hazard, cargo, property damage, fireworks display, primary purpose, transporting, transportation, inflammable, explosive, insurer, risk of harm, premature, warranty, insurance policy, bodily injury, intentionally, declaratory judgment, mortars

**JUDGES:** Before: Murphy, P.J., and O'Connell and Murray, JJ.

**OPINION:**

PER CURIAM.

Exhibit 3
Page 1 of 16 Pages

City"), Hartford Casualty Insurance Company ("Hartford"), and Columbia Casualty Company ("Columbia") appeal as of right from the circuit court's orders granting summary disposition in favor of defendants. n1 We affirm.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendants Richard Davis, Michael Jaye, Curtis Glen Crawford, and Lawrence Grise are allegedly employees of defendant Second Chance. The remaining defendants are claimants who purportedly sustained injuries as a result of the fireworks explosion.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

I. Background

These cases arise out of an insurance coverage dispute concerning the interpretation and application of a general liability policy **[*2]** issued jointly by Twin City and Hartford, an umbrella policy issued by Hartford, and a general liability policy issued by Columbia to Second Chance Body Armor, Inc. ("Second Chance"). In the underlying actions, the plaintiffs were individuals who sustained injuries from a premature explosion during a fireworks display at the Charlevoix Venetian Festival.

The plaintiffs brought suit against Second Chance, alleging, in relevant part, that Second Chance was vicariously liable for the negligent actions of its workers with regard to the design or construction of the trailer from which the fireworks were launched. See *Sokolowski v City of Charlevoix*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2003 (Docket No. 241037); *Dobrowolski v Second Chance Body Armor*, unpublished opinion per curiam of the Court of Appeals, issued June 3, 2003 (Docket No. 238007). After hearings in the underlying actions, the trial courts granted summary disposition in favor of Second Chance. *Sokolowski, supra* at 2; *Dobrowolski, supra* at 1. The plaintiffs appealed, and this Court reversed, holding that there was a genuine issue of material fact whether the allegedly **[*3]** negligent workers were acting within the scope of their employment with Second Chance. *Sokolowski, supra* at 4; *Dobrowolski, supra* at 2. Thus, the plaintiffs had the right to proceed in their underlying tort cases against Second Chance.

In the instant cases, plaintiffs filed complaints requesting a judgment declaring that they had no duty to defend or indemnify Second Chance against claims relating to injuries from the fireworks explosion according to the terms of their respective polices. Following this Court's decisions in the underlying cases, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10), contending that plaintiffs were obligated under their policies to defend and indemnify Second Chance for any liability in the tort actions. n2 With regard to the Twin City and Hartford policies, defendants asserted that the "products-completed operations hazard" exclusions did not preclude coverage because of the application of the exception for products still in the possession of Second Chance. With regard to the Columbia policy, defendants claimed that Second Chance did not make material misrepresentations in its insurance **[*4]** application because it truthfully answered in the negative the question of whether its products were inflammable or explosive. Defendants also claimed that the fireworks explosion was an "occurrence" according to the policy because it was an accident based on the negligent actions, not the

Exhibit 3
Page 2 of 16 Pages

intentional conduct, of the workers. Defendants further asserted that the "auto" and "**mobile equipment**" exclusions did not apply to preclude coverage.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Apparently, the remaining defendants adopted the arguments of defendants Sokolowski.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Twin City and Hartford filed a response, contending that the potential liability of Second Chance in the underlying tort actions was excluded from the policies. Twin City and Hartford further contended that the exclusions for product liability and automobiles precluded coverage. They argued that the workers were not covered under the policies because Second Chance was the only named insured and the workers were not acting within the scope of their employment with Second Chance, but rather **[*5]** as volunteers for Fireworks North, a nonprofit organization. Twin City and Hartford requested partial summary disposition and a declaration that only two causes of action remained, including a products liability action and negligent discharge of fireworks action, that the products liability exclusion precluded any claims for products liability by the claimants, that the claims were also precluded based on application of the "auto" exclusion, and that the workers were not acting within the course and scope of their employment at the time of the incident.

Columbia also filed a response to defendants' motion, claiming that summary disposition was improper because (1) the motion was not supported by documentary evidence and defendants failed to specify the undisputed issues, (2) additional discovery regarding the extent of Second Chance's participation and the circumstances surrounding the incident was necessary, (3) there remained genuine issues of material fact, and (4) the factual disputes regarding coverage should be resolved in the underlying cases. With regard to the factual disputes, Columbia contended that there were questions regarding whether Second Chance's statements in the **[*6]** insurance application were accurate and complete, whether the liability in the underlying actions arises out of Second Chance's business, whether the injuries were caused by an accident or an expected or intended injury, and whether the "expected or intended injuries" exclusion, the "auto" exclusion, or the "**mobile equipment**" exclusion applied to preclude coverage.

On July 13, 2005, the trial court heard oral arguments on defendants' motion for summary disposition and declaratory relief. With regard to the Twin City and Hartford policies, defendants again contended that the "products-completed operations hazard" exclusion did not apply because there was an exception for products that remained in the possession of Second Chance. Defendants argued that, if they proved Second Chance's liability in the underlying cases, it would follow that there was coverage because the trailer was necessarily in the possession of Second Chance through its employees. Defendants asserted that the trial court was precluded from ruling that Second Chance had no involvement because of this Court's holding that this was a matter for the trier of fact. Defendants also contended that the "auto" exclusion did **[*7]** not apply because Twin City and Hartford recently raised the issue and there was an exception for **mobile equipment.** Defendants argued that the trailer was **mobile equipment** as that term was defined

Exhibit 3
Page 3 of 16 Pages

in the policy because its primary purpose was for launching fireworks, not transporting cargo or persons.

Twin City and Hartford asserted that the primary basis for denying the motion was because there had yet to be an actual finding that the workers were working within the scope of their employment with Second Chance. Twin City and Hartford further asserted that both the "products-completed operations hazard" and the "auto" exclusions applied to preclude coverage. With regard to possession of the trailer, they argued that Fireworks North, not Second Chance, purchased, received a permit for and launched the fireworks. With regard to the characterization of the trailer, they argued that it was a motor vehicle as defined under the policy and pursuant to Michigan law and that the term "**mobile equipment**" was limited to certain types of machinery, such as cherry pickers and similar devices mounted on automobiles or truck chassis, air compressors, pumps and generators.

The trial court agreed **[*8]** with defendants' position that the "products-completed" exclusion did not apply because the trailer remained in the possession of Second Chance and that the "auto" exclusion likewise did not apply based on the definition of "**mobile equipment.**" The trial court reasoned, "It is clear that the purpose of the trailer was primarily something other than transporting cargo or people." Therefore, the trial court determined that it was prepared to enter a judgment "that would declare if a judgment or judgments are entered against Second Chance in the underlying tort actions, which in accordance with the Appellate Court's determination will necessarily involve a jury determination that the Second Chance employees were acting in the course and scope of their employment. Then in such an event the Hartford Companies are obligated to indemnify Second Chance."

With regard to the Columbia policy, defendants again asserted that the similar "auto" exclusion did not apply because of the exception for **mobile equipment.** Defendants reiterated that the primary purpose of the trailer was for launching fireworks, not transporting mortars or other cargo. Defendants contended that the allegations of misrepresentation **[*9]** were false because none of Second Chance's actual products were inflammable or explosive. Defendants also contended that the insured had no affirmative duty to raise matters not asked in the application. Defendants further argued that Columbia must defend and indemnify Second Chance because there was no proof that the workers ever intended to injure or kill through their actions.

Columbia responded by asserting that any ruling was premature since the decisions the trial court was being asked to make related to the underlying tort actions, and it was improper to determine the coverage issue before the underlying cases where issues in both are substantially interrelated. Furthermore, Columbia argued that summary disposition should be denied because there were genuine issues of material fact regarding whether Second Chance made material misrepresentations on its application for insurance, particularly, where it signed an application warranty requiring that it disclose any facts that might bear on the risk of the insured. Columbia also argued that whether the incident could be considered an "occurrence" remained a matter in dispute because intentional acts that create a direct risk of **[*10]** harm are not occurrences insured under its policy. Columbia contended that three exclusions in its policy applied to preclude coverage, including the "expected or intended injuries" exclusion, the "auto" exclusion and the "**mobile equipment**" exclusion. Columbia requested further discovery to determine the extent of Second Chance's involvement and the facts surrounding the accident.

Exhibit 3
Page 4 of 16 Pages

The trial court proceeded to a determination of defendants' motion, holding that the "auto" exclusion did not apply to preclude coverage because the trailer satisfied the **mobile equipment** exception. The trial court found that knowledge of the risks did not convert the intentional acts of the workers into conduct that could be considered intentional. Thus, the trial court held that there was no genuine issue of material fact that the injuries sustained were expected or intended. The trial court also concluded that there was no material factual dispute that Second Chance manufactured products that were inflammable or explosive or that it misrepresented material facts in the application. The trial court ruled that "if a jury renders verdicts in the underlying tort actions, which would necessarily involve a **[*11]** finding in those actions that Second Chance employees were acting in the course and the scope of their employment, then the Columbia Insurance Company is obligated to pay that judgment."

In accordance with its rulings, the trial court entered an order granting summary disposition in favor of defendants and declaring that Twin City and Hartford had a duty to indemnify Second Chance for any judgment entered against it in the underlying tort actions. The trial court also denied Twin City's and Hartford's counter motion for partial summary disposition. In a separate order, the trial court granted summary disposition in favor of defendants and declared that Columbia had a duty to indemnify Second Chance for any judgment entered against it in the underlying tort actions. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Subsequently, plaintiffs filed motions for reconsideration, which the trial court denied.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

II. Standard of Review

We review de novo a trial court's decision to grant or deny summary disposition. *Spiek v Dep't of Transportation*, 456 Mich. 331, 337; **[*12]** 572 N.W.2d 201 (1998). A claim under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich. 274, 278; 681 N.W.2d 342 (2004). The court must consider the affidavits, depositions, admissions, or other documentary evidence in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich. 109, 120; 597 N.W.2d 817 (1999). Summary disposition is appropriate when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10); *Auto-Owners Ins v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 N.W.2d 685 (1999). Similarly, the interpretation of an insurance contract is a question of law that we review de novo. *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 332; 632 N.W.2d 525 (2001).

III. Analysis

A. Findings of Fact

Exhibit 3
Page 5 of 16 Pages

Twin City and Hartford contend that the trial court **[*13]** erred by making findings of fact in ruling that defendants' motion for summary disposition should be granted. Plaintiffs cite two specific findings of the trial court: (1) the trailer was in the possession of Second Chance, and (2) the purpose of the trailer was primarily for something other than transporting cargo or people, in other words, its purpose was primarily for use in launching fireworks.

MCR2.116(C)(10) tests the factual support for the claim. _Maiden, supra_ at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." _West v General Motors Corp_, 469 Mich. 177, 183; 665 N.W.2d 468 (2003). A court may only consider the "substantively admissible evidence actually proffered in opposition to the motion." _Maiden, supra_ at 121. In addition, a court may not make factual findings or weigh credibility. **_Burkhardt v Bailey_, 260 Mich. App. 636, 646-647;** 680 N.W.2d 453 (2004).

According to the Court of Appeals decisions, the plaintiffs **[*14]** would have causes of action in the underlying tort cases if they could prove that Second Chance, through its employees, renovated the trailer and launched the fireworks. _Sokolowski, supra_; _Dobrowolski, supra_. Therefore, defendants asserted below that, if Second Chance were found liable in the underlying cases, it would necessarily follow that the trailer would be in the possession of Second Chance and insurance coverage would apply. Although the trial court stated that the "products-completed operations hazard" exclusion did not apply because the trailer was still in the possession of Second Chance, the trial court's statement was based on the following reasoning:
. . . I am prepared to enter a declaratory judgment that would declare if a judgment or judgments are entered against Second Chance in the underlying tort actions, which in accordance with the Appellate Court's determination will necessarily involve a jury determination that the Second Chance employees were acting in the course and scope of their employment. Then in such an event the Hartford Companies are obligated to indemnify Second Chance.


The trial court recognized that any liability of **[*15]** Second Chance was predicated on a finding that the workers launching the fireworks were acting within the course and scope of their employment with Second Chance. Thus, if Second Chance were found liable by a trier of fact, there would be no doubt that the trailer was still in Second Chance's possession at the time of the incident. Therefore, this was not a factual finding of the trial court.

In a related argument, Twin City and Hartford assert that the facts demonstrated that the trailer was not in the possession of Second Chance at the time of the incident. As indicated, the issue of possession relates to whether the workers were acting within the course and scope of their employment with Second Chance, which is a question to be determined by a trier of fact. See _Sokolowski, supra_; _Dobrowolski, supra_. The trial court properly left this employment issue and related issues for resolution in the underlying tort action.

The trial court also concluded that there was no genuine issue of material fact that the trailer was not a vehicle according to the plain language of the insurance policies, which defined the term as "maintained primarily for purposes other than the **[*16]** transportation of persons or cargo." A court must enforce an insurance policy

Exhibit 3
Page 6 of 16 Pages

according to its clear and unambiguous terms. *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich. 558, 566; 596 N.W.2d 915 (1999). Moreover, a trial court is permitted to determine whether the record that might be developed leaves open an issue on which reasonable minds could differ. *West, supra* at 183.

There was evidence that defendant Richard Davis purchased the trailer from defendant Curtis Crawford. Davis then designed and he, defendant Glen Crawford and defendant Larry Grise modified the trailer for use in launching fireworks. There was photographic evidence before the trial court that the rear of the trailer contained large, permanently mounted launch tubes or "mortars" for shooting fireworks. Based on this evidence, the trial court concluded that no reasonable juror could conclude that the trailer was anything but a mobile platform for launching fireworks and could not have been used to transport people or cargo. n4 The trial court properly concluded that this was not an issue on which reasonable minds could differ. Thus, the trial court made **[*17]** a conclusion based upon the undisputed evidence, and did not make factual findings to determine this issue.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Twin City and Hartford essentially admitted that the trailer's primary purpose was not for transportation when they stated in their summary disposition brief that the trailer was "modified" into "a platform for shooting off fireworks . . . ."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

B. Products Liability Exclusion

Twin City and Hartford assert that the trial court erred in holding that their policies' exclusion of products liability actions did not operate to bar defendants' claims. We disagree.

An insurance policy is a type of contract that should be read as a whole to determine the intention of the parties. *City of Grosse Pointe Park v Michigan Municipal Liability & Property Pool*, 473 Mich. 188, 197; 702 N.W.2d 106 (2005); *South Macomb Disposal Authority v American Ins Co (On Remand)*, 225 Mich. App. 635, 653; 572 N.W.2d 686 (1997). The policy must be enforced in accordance with **[*18]** its clear and unambiguous terms. *Nikkel, supra* at 566. A court cannot read ambiguities into the policy. *City of Grosse Pointe Park, supra* at 198. A clear and specific exclusion must be given effect, but the exclusion clause is to be strictly construed in the insured's favor. *McKusick v Travelers Indemnity Co*, 246 Mich. App. 329, 333; 632 N.W.2d 525 (2001).

Although plaintiffs contend that defendants' claims are essentially products liability actions as defined by Michigan case law and statutes, this Court must look to the actual terms of the insurance contract to determine whether coverage exists. *Michigan Educational Employees Mut Ins Co v Turow*, 242 Mich. App. 112, 115; 617 N.W.2d 725 (2000). The joint Twin City and Hartford policy excludes coverage for liability within what is termed the "products-completed operations hazard" exclusion, which states: "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'" The term "products-completed operations hazard" is defined as follows:

Exhibit 3
Page 7 of 16 Pages

a. Includes all "bodily [*19] injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) *Products that are still in your physical possession*; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; [*20]

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit (emphasis added).

The umbrella policy issued by Hartford contains virtually the same definition, with the exception of subsection b(3). According to the policies' language, there is an exception to this exclusion for injuries resulting when the product is still in the physical possession of the insured.

The trial court in this case and this Court in the *Dobrowolski* and *Sokolowski* cases recognized that the claims in the underlying tort actions were predicated on a finding that the individuals who launched the fireworks display were acting within the course and scope of their employment with Second Chance. See *Dobrowolski*, *supra*; *Sokolowski*, *supra*. Specifically, in *Dobrowolski*, this Court held that Second Chance could be found liable only if the jury concludes that Davis and the other workers "renovated the trailer and performed the display within the scope of [*21] their employment with Second Chance." *Id*. at 2. Therefore, if the trier of fact makes

Exhibit 3
Page 8 of 16 Pages

these findings, the claim is an exception to the "products-completed operations hazard" exclusion and coverage applies because the trailer was still in Second Chance's possession at the time that the injuries occurred. The trial court properly concluded that the "products-completed operations hazard" exclusion would not operate to bar coverage for any judgment entered against Second Chance in the underlying tort actions.

C. Auto Exclusion

Twin City, Hartford and Columbia contend that the trial court erred in holding that the policies' "auto" exclusions did not operate to bar defendants' claims. n5 We disagree.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Defendants contend that the "auto" exclusion issue was not timely raised before the trial court. However, defendants were on notice that plaintiffs relied, in part, on this exclusion to refuse coverage. Plaintiffs cited the "auto" exception in the reservation of rights letter dated September 10, 1999, and raised the general issue of the denial of coverage for bodily injury, death and damages arising from the underlying incident in their first amended complaint.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*22]**

Both the joint policy issued by Twin City and Hartford and the policy issued by Columbia contain the following exclusion:

This insurance does not apply to:

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

\*\*\*

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "**mobile equipment.**"

The umbrella policy issued by Hartford contains a similar exclusion for "liability arising out of the . . . [u]se . . . [o]f any 'auto.'" Plaintiffs contend that a trailer is an "auto" under the plain language of their policies, and therefore, the above exclusions bar coverage. The term "auto" in all three policies means "a land motor vehicle,

Exhibit 3
Page 9 of 16 Pages

trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. *But 'auto' does not include' **mobile** [*23] **equipment.**'* (Emphasis added). The term "**mobile equipment**" is defined as follows:
"**Mobile equipment**" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.** or **d.** above [*24] *maintained primarily for purposes other than the transportation of persons or cargo.*

However, self-propelled vehicles with the following types of permanently attached equipment are not "**mobile equipment**" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment (emphasis added).

The umbrella policy contains virtually the same definition.

Exhibit 3
Page 10 of 16 Pages

The trial court concluded that there was no genuine issue of material fact regarding whether the auto exclusion from the policies applied because it determined that the primary purpose of the trailer was not for transporting people or cargo. The trial court specifically rejected Columbia's argument that the trailer had a dual purpose of transporting and launching mortars and fireworks, reasoning:

[T]here is a picture of that **[*25]** trailer attached to these pleadings. And I think merely because they loaded some of those trailers with mortars at the site of Second Chance, or Central Lake, or wherever, and transported it to Charlevoix for purposes of launching does not make it designed both for transporting and launching. Clearly the primary purpose of that trailer was to launch the fireworks.

There was evidence that the trailer was modified to be a mobile launching platform for fireworks, and therefore, it clearly fits under the exception as a "vehicle[] . . . maintained primarily for purposes other than the transportation of persons or cargo." As the trial court noted, there is no record evidence that the primary purpose of the trailer was for transportation rather than launching fireworks. While the trailers may have carried some of the mortars to the launching location, such use was ancillary to and related to the primary purpose of use as a launching platform. According to the plain language of all three policies, **mobile equipment** such as the trailer at issue satisfies the exception to the "auto" exclusions. Therefore, the trial court did not err in concluding that reasonable minds could not differ **[*26]** on this issue.

D. **Mobile Equipment** Exclusion

In a related argument, Columbia contends that, if the "auto" exclusion does not apply because the trailer is **mobile equipment,** its policy's "**mobile equipment**" exclusion would nonetheless bar defendants' claims. We disagree.

Columbia's policy provides an exclusion for the following:

H. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "**mobile equipment**" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "**mobile equipment**" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

Columbia argues that a fireworks display could be considered a stunting activity and relies on <u>US Fire Ins Co v Kentucky Truck Sales, Inc, 786 F.2d 736</u> (CA 6, 1986). However, that court made no mention of a fireworks display, rather it held that a policy exclusion for "stunting activity" barred coverage for a truck pull. <u>Id. at 738-740.</u> The policy does not define the term "stunting activity." Even if this Court could stretch the undefined term broadly **[*27]** enough to include a fireworks display, any

Exhibit 3
Page 11 of 16 Pages

ambiguity must be construed against the policy's drafter, or in this case, against Columbia. *Klapp v United Ins Group Agency, Inc*, 468 Mich. 459, 470; 663 N.W.2d 447 (2003). Therefore, the trial court properly rejected Columbia's argument that this exclusion applied to preclude coverage.

E. Expected or Intended Injury Exclusion

Columbia asserts that the trial court erred in holding that there was no genuine issue of material fact regarding whether defendants' conduct created a direct risk of harm to which the "expected or intended injury" exclusion applied to preclude coverage. We disagree.

Columbia's policy excludes from coverage the following:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Columbia argues that coverage is barred because the workers intentionally performed the fireworks display thereby creating a direct risk of harm to the spectators. Columbia cites *Nabozny v* **Burkhardt**, 461 Mich. 471; [*28] 606 N.W.2d 639 (2000) for the proposition that the courts infer an intent to injure or deem that the injury was expected when intentional conduct creates a direct risk of harm.

In *Nabozny*, the Michigan Supreme Court considered a policy that defined the term "occurrence" as an "accident" and held that coverage did not apply because the plaintiff's injury of a broken ankle was not an accident. *Id*. at 473-474. In determining whether the plaintiff's injury was an "accident" notwithstanding the intentional character of the insured's actions, the *Nabozny* Court relied on *Frankenmuth Mut Ins Co v Masters*, 460 Mich. 105; 595 N.W.2d 832 (1999), which stated that "a determination must be made whether the consequences of the insured's intentional act either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions." *Id*. at 115 (citation omitted). The facts of *Nabozny* and *Masters* are distinguishable from those in this case. Both *Nabozny* and *Masters* involved intentional tortious conduct by the insureds. In *Nabozny*, the insured [*29] intentionally tripped the victim, but did not intend to break the victim's ankle. *Id*. at 480-481. In *Masters*, the insureds intended to set the fire to damage their inventory, but did not intend to destroy their building or neighboring businesses. *Id*. at 107, 116-117.

In this case, the trial court rejected Columbia's assertion, reasoning:
I also have struggled with the allegations that there was or could be intentional conduct here of such a character that would create a direct risk of harm and therefore there is no coverage. I recall in earlier proceedings the claim that Mr. Davis, I think, had recognized the risk here, and so forth, and that he may have at onetime expressed a desire to locate the launching in a different site or place. And

Exhibit 3
Page 12 of 16 Pages

the City, or the Chamber, or somebody, desired that they continue to launch them in East Park. But knowing the magnitude, and the risk, and so forth, I don't think converts the intentional acts into conduct that can be described that would be intentional, and therefore disallow coverage under this policy. I don't think that there's any genuine issue of material fact, that these various injuries were expected or intended.

**[*30]**

The trial court's conclusion is not erroneous. Application of exclusionary language in a policy is dependent on the insured's subjective expectations. *American Bumper & Mfg Co v Nat'l Union Fire Ins Co*, 261 Mich. App. 367, 376; 683 N.W.2d 161 (2004). Unlike in *Nabozny*, where the insured should have expected the resulting injury when he intentionally tripped someone to the ground during a fight, *id*. at 481, the workers' knowledge of the risk of performing a fireworks display cannot translate into an intent or expectation to harm. Therefore, the trial court did not err in concluding that this exclusion did not apply to preclude coverage.

F. Material Misrepresentations

Columbia claims that the trial court erred in holding that there was no genuine issue of material fact regarding whether Second Chance made material misrepresentations in its application for insurance which would result in the preclusion of coverage. We disagree.

An insurer may rescind an insurance policy upon discovery that an insured made a material misrepresentation on its application and that the misrepresentation affected the acceptance of the risk or the hazard assumed **[*31]** by the insurer. *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich. App. 126, 129;    N.W.2d     (2005). n6 At the summary disposition hearing, Columbia referenced only one question in the application as evidence of a material misrepresentation. The application contains the question: "Are any of your products inflammable or explosive?" Second Chance answered, "No." Columbia contended that this was a material misrepresentation because the fireworks were a product allegedly used by its employees to promote Second Chance's business. The trial court concluded that with regard to the alleged misrepresentation in the application there was no genuine issue of material fact that Second Chance did not manufacture products that were inflammable or explosive. According to the application, Second Chance's products included, anti-ballistic body armor, puncture-resistant armor, and other protective products. It was obvious to the trial court, as it is to us, that these products were not inflammable or explosive and that Second Chance properly answered the question in the application. Therefore, the trial court did not err in concluding that reasonable **[*32]** minds could not differ on this matter.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 Generally, whether a material fact was intentionally or fraudulently concealed is a matter for jury determination. *Jacobs v Queens Ins Co of America*, 183 Mich. 512, 526; 150 NW 147 (1914), citing *Johnson v Scottish Union & N Ins Co*, 93 Wis 223; 67 NW 416 (1896). However, this Court has upheld a summary disposition ruling that there existed no genuine issue of material fact regarding the materiality of misrepresentation in an insurance contract. See *Clark v John Hancock Mut Life Ins*

Exhibit 3
Page 13 of 16 Pages

Co, 180 Mich. App. 695, 698-702; 447 N.W.2d 783 (1989) (holding that the plaintiff failed to show the existence of a factual dispute regarding the materiality of the misrepresentation where the substance of the plaintiff's affidavit was insufficient to contradict the contents of the affidavit that the defendant submitted in support of its motion for summary disposition).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Columbia further asserted that **[*33]** the application contained a warranty requiring Second Chance to disclose any material matters affecting the risks involved in insuring the company. The warranty states:

Applicant hereby covenants and agrees that the foregoing statements and answers are just, full and true exposition of all the facts and circumstances with regard to the risk to be insured, insofar as same are known to the Applicant . . . .

Columbia claimed that this warranty was to be construed broadly. The trial court held that "there is no genuine issue of material fact with regard to the separate issue of misrepresentation so as to exclude coverage." The trial court relied on Federal Land Bank of St Paul v Edwards, 262 Mich. 180, 184; 247 NW 147 (1933), which held that the insured may not be deemed to have fraudulently concealed a fact about which the insurer never inquired. This is true because "[t]he insurer is assumed to know the extent of the information desired, and to seek it, and cannot avoid liability by claiming there was concealment of the fact . . . when it did not ask about such a matter and called for no such information in its written application." **[*34]** Id. at 185. The warranty provision referred to the validity of the statements and answers contained within the application, not to additional information, and only required disclosure "insofar as same are known to the Applicant." Given the language of the warranty and prevailing case law, Second Chance did not have an affirmative duty to disclose information beyond the questions asked in the application. Therefore, the trial court did not err in ruling that there was no genuine issue of material fact because no reasonable minds could differ on this issue. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Apparently, Columbia also provided some unsigned documents that were purportedly part of the application process. However, the trial court may only consider substantively admissible evidence in deciding a motion for summary disposition. Maiden, supra at 121.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

G. Premature Determination

i. Underlying Tort Actions

Exhibit 3
Page 14 of 16 Pages

Columbia claims that the trial court made a premature determination regarding coverage under its insurance **[*35]** policy. Specifically, Columbia argues that the determination was premature because Second Chance had not been found liable nor had the basis of any liability in the underlying tort actions been determined, and because the factual determinations that have yet to be resolved in the underlying actions are inseparable from the facts critical to a resolution of the coverage issue. We disagree.

Under MCR 2.605(A)(1), a trial court has authority to enter a judgment "declar[ing] the rights and other legal relations of an interested party." The rule allowing declaratory judgment is to be "liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people." _Allstate Ins Co v Hayes_, 442 Mich. 56, 65; 499 N.W.2d 743 (1993) (citations omitted). There is a plethora of case law where the insurer or insured has sought a declaratory action to determine disputed issues of coverage. See _Auto Owners Ins Co v Harrington_, 455 Mich. 377, 380; 565 N.W.2d 839 (1997); _Citizens Ins Co v Pro-Seal Serv Group, Inc_, 268 Mich. App. 542, 544-545; 710 N.W.2d 547 (2005); **[*36]** _Turow, supra_ at 113-114; _Allstate, supra_ at 57.

The allegedly interrelated factual issues precluding a determination of coverage actually relate to the liability issue or are legal, not factual, matters properly determined by the trial court in this action. In particular, we have already determined that the trial court did not err in concluding that none of plaintiffs' asserted exclusions applied to preclude coverage. Moreover, a declaratory judgment may rightly determine the rights of the parties based on future contingencies. See _Manley v Detroit Auto Inter-Insurance Exchange_, 425 Mich. 140, 157; 388 NW2d 216 (1986). Thus, it is not a barrier to declaratory relief where an insurer is not liable to defend or indemnify the insured unless a judgment is entered against the insured in an underlying tort action. The declaratory judgment entered by the trial court in this case predicated coverage on the subsequent finding of liability in the underlying cases. Therefore, the trial court did not err by entering a declaratory judgment regarding insurance coverage before resolving the underlying tort actions.

ii. Further **[*37]** Discovery

Columbia also claims that the trial court made a premature determination regarding coverage under its insurance policy because further discovery was necessary. We disagree.

"The purpose of summary disposition is to avoid extensive discovery and an evidentiary hearing when a case can be quickly resolved on an issue of law." _Shepherd Montessori Ctr Milan v Ann Arbor Twp_, 259 Mich. App. 315, 324; 675 N.W.2d 271 (2003). Nonetheless, "a motion under MCR 2.116(C)(10) is generally premature if discovery has not closed, unless there is no fair likelihood that further discovery would yield support for the nonmoving party's position." _Townsend v Chase Manhattan Mtg Corp_, 254 Mich. App. 133, 140; 657 N.W.2d 741 (2002); see also _Peterson Novelties, Inc v City of Berkley_, 259 Mich. App. 1, 25; 672 N.W.2d 351 (2003). "If a party opposes a motion for summary disposition on the ground that discovery is incomplete, the party must at least assert that a dispute does indeed exist and support that allegation by some independent evidence." _Bellows v Delaware McDonald's Corp_, 206 Mich. App 555, 561; **[*38]** 522 N.W.2d 707 (1994).

Exhibit 3
Page 15 of 16 Pages

Columbia argues that further discovery was necessary, in part, to determine if there was evidence to support defendants' allegations in the underlying actions. However, Columbia admits that it has been providing a defense for Second Chance in the underlying actions under a reservation of rights. Thus, there appears to be nothing precluding Columbia from obtaining the results of discovery in those actions. While discovery was stayed for a period of time, Columbia was not precluded from participating in discovery before and after the stay. In fact, Columbia filed a response with supporting documentation in opposition to defendants' motion for summary disposition. Furthermore, as indicated above, evidence establishing Second Chance's liability and the basis of that liability is not necessary to render a decision on whether coverage applied. Therefore, the trial court did not resolve this action prematurely.

H. Insufficient Evidence

Columbia contends that the trial court erred in concluding that defendants supported their motion for summary disposition with evidence and that the record contained no material factual disputes. We disagree.

The [*39] party requesting summary disposition must identify the issues that have no disputed material facts and bears the initial burden of providing documentary support for its position. *Maiden v Rozwood*, 461 Mich. 109, 120; 597 N.W.2d 817 (1999); *Smith v Globe Life Ins Co*, 460 Mich 446, 455; 597 N.W.2d 28 (1999); see also MCR 2.116(G)(4). The party opposing a motion that has been supported by evidence must then provide evidence to support its position that a genuine issue of material fact exists for trial. *Id*. at 120; *Id*. at 455.

In support of their motion for summary disposition, defendants relied on the policy and the application for insurance attached to Columbia's pleadings and on the two cases that this Court issued in the underlying tort actions. Defendants also relied on a photograph of the trailer, which was apparently attached to their motion in the underlying case and their reply brief in this case. Utilizing this evidence, defendants argued that they had not made material misrepresentations on the insurance application and had no affirmative duty to raise issues not asked in [*40] the application, that there was no proof that the workers intended to injure or kill through their conduct and that the exclusions under the policy did not apply. Review of the record shows that there was sufficient documentation to support the trial court's ruling on defendants' motion. The trial court properly determined as a matter of law the issue of coverage only and refused to address an factual matters pertaining to whether the workers were acting within the course and scope of their employment.

Affirmed.
/s/ William B. Murphy

/s/ Peter D. O'Connell

/s/ Christopher M. Murray

Exhibit 3
Page 16 of 16 Pages