MICHAEL DENNIS  11/16/2006  GREAT DIVIDE v. CHRISTIANSON
Vol. 1                      3:06-CV-00060

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

GREAT DIVIDE INSURANCE )
COMPANY,                )
                        )
           Plaintiff,   )
                        )
v.                      )
                        )
TODD CHRISTIANSON, and   )
d/b/a Great Alaska Lawn  )
and Landscaping, Inc.; and )
Keith Jones,             )
                        )
           Defendants.  )
_____)

Case No. 3:06-cv-00060 TMB

DEPOSITION OF MICHAEL W. DENNIS

November 16, 2006

APPEARANCES:

   FOR THE PLAINTIFF:   MR. MICHAEL W. FLANIGAN
                              Walther & Flanigan
                              Attorneys at Law
                              1029 West Third Avenue
                               Suite 250
                              Anchorage, Alaska 99501
                              (907) 279-9999

   FOR DEFENDANT CHRISTIANSON:  MR. KEVIN T. FITZGERALD
                              Ingaldson, Maassen & Fitzgerald
                              Attorneys at Law
                              813 West 3rd Avenue
                              Anchorage, Alaska  99501
                              (907) 258-8751

Exhibit E
Page 1 of 15 Pages

MICHAEL DENNIS  11/16/2006  GREAT DIVIDE v. CHRISTIANSON
Vol. 1  3:06-CV-00060

Page 10

1  Topsoil; is that right?
2  A  Yes.
3  Q  And that the insurance that was placed was worker's comp,
4     auto and GL?
5  A  Yes.
6  Q  Do you recall whether there was any comparative shopping
7     at the time that you became involved, any comparative
8     shopping of any insurers in order to place insurance for
9     Christianson and his companies?
10 A  No.
11 Q  Okay.  Now you indicated that -- and I see from the
12    documents and -- and I might just add that when Mr.
13    Houston was here he indicated that -- that there were
14    some additional documents that needed to be produced
15    and -- and since he appeared there's a stack of
16    probably 15 hundred or more pages of documents.  If
17    you know, are there additional documents that aren't
18    included in -- in those documents that have been
19    provided to counsel?
20 A  I'm not aware.
21 Q  Okay.  I -- I notice that there is a relationship
22    with Superior Underwriters.  And can you describe
23    generally what -- what the purpose of that
24    relationship is and what that relationship does?
25 A  Yes.  Superior is a wholesale broker and we present

Exhibit  E
Page  2  of  15  Pages

Computer Matrix, LLC          Phone - 907-243-0668       jpk@gci.net
310 K Street, Suite 200       Fax     907-243-1473       sahile@gci.net

MICHAEL DENNIS                11/16/2006        GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                          3:06-CV-00060

Page 11

```
 1        insurance to them and then they use the companies that
 2        they are contracted with, or -- or whatever, to give us a
 3        quote.
 4   Q    And is there some -- if you know, is there some agreement
 5        or contract between CHI and Superior which would dictate
 6        that Superior would be the -- the wholesale broker?
 7   A    That I don't know.
 8   Q    Okay.  Have you ever placed insurance with another
 9        wholesale broker besides Superior?
10   A    Yes.
11   Q    Okay.  And who -- who and.....
12   A    Alaskan General, Swift Crawford, American E&S; there are
13        others that I don't recall.
14   Q    Okay.  In the context in which the -- the business
15        context in which we're speaking here, which is
16        essentially as a general contractor in the areas of
17        excavation, landscaping, have you ever placed
18        insurance through another wholesale broker besides
19        Superior for like companies?
20   A    I don't know.
21   Q    Okay.  Now you indicated that with regard to the process
22        that the process typically begins with you obtaining
23        information from a client.  And I'm -- I'm -- you know who
24        I'm referring to when I talk about a client?
25   A    Yes.
```

Exhibit  E
Page  3  of  15  Pages

Computer Matrix, LLC              Phone - 907-243-0668              jpk@gci.net
310 K Street, Suite 200           Fax    907-243-1473               sahile@gci.net

Page 12

1   Q   Okay. And in this particular case when did the --
2       the relationship begin between you and Christianson
3       and his companies, if you remember?
4   A   Sometime in '03.
5   Q   And prior to that time you had had no relationship with
6       Christianson and/or his companies either with another
7       entity or individually on your own part?
8   A   No.
9   Q   And how is it that -- if you recall, how is it -- and I
10      know this is some years ago. How is it that the business
11      was brought to you?
12  A   I believe Todd called.
13  Q   Okay. And do you recall meeting with Todd in your office
14      or was it confined at least preliminarily to phone calls?
15  A   I don't remember.
16  Q   Speak to anybody else at -- with his companies, if you
17      recall?
18  A   No.
19  Q   Pauline Jackson or Kevin Thompson or.....
20  A   I have had conversations with them but prior to that
21      I don't remember.
22  Q   Okay. But the conversations you may have had was after
23      the initial kind of relationship had begun between you and
24      Christianson and his companies?
25  A   I believe so.

Exhibit ___E___
Page __4__ of __15__ Pages

MICHAEL DENNIS                11/16/2006              GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                3:06-CV-00060

Page 17

1   A   Yes.

2   Q   .....and assistance in providing; is that right?

3   A   Yes.

4   Q   Okay. And based on the information that was provided

5       to -- by Christianson to you, what -- do you recall

6       what insurance you placed for him and with what

7       companies?

8   A   Yes, I specifically remember the general liability

9       and the worker's comp. And the worker's comp was

10      with -- with AIG, American International Group, which

11      is a carrier in Alaska. And then the general

12      liability I wouldn't have remembered except that

13      we've talked about Great Divide handling the

14      insurance on that.

15  Q   And -- and what part would Superior have played with

16      regard to placing the insurance with any of those

17      companies?

18  A   That's who they put it with or that's who they sent me the

19      quote from, was through Great Divide.

20  Q   So the process would be that you get the information from

21      the client or the customer. You then convey that same

22      information to the underwriter who then is specifically

23      tasked with the -- with getting the insurance?

24  A   Correct.

25  Q   Okay. And did that -- was that process followed in

Exhibit  E
Page  5  of  15  Pages

Computer Matrix, LLC              Phone - 907-243-0668              jpk@gci.net
310 K Street, Suite 200           Fax     907-243-1473              sahile@gci.net

Page 25

1   A   Yeah.
2   Q   And then it indicates that it appears to be a commercial
3       general liability application. Would there have been a
4       separate insurance application for another type of
5       insurance?
6   A   No.
7   Q   Am I reading this incorrectly?
8   A   No. The -- the court application is what they use. This
9       -- this commercial insurance applicant information section
10      is the applicant information section. The -- the other
11      part here is the general liability section. And then the
12      last part would be the equipment floater that we looked
13      at. And that's again for the physical damage of the
14      vehicle, of -- of tools, equipment, that you have in your
15      shop.
16  Q   But all the information that -- that is now marked as
17      Exhibit 1 would have been information that would have been
18      passed on to the underwriter for purposes of placing the
19      insurance?
20  A   For purposes of placing the general liability insurance,
21      the last two parts would not have been part of that
22      application for general liability. That would have been
23      for different insurance.
24  Q   Okay. Do you if -- if -- did Superior Underwriting place
25      the insurance that placed worker's comp, general liability

Exhibit  E
Page  6  of  15  Pages

MICHAEL DENNIS                    11/16/2006        GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                              3:06-CV-00060

Page 26

```
 1         and auto?
 2  A      No.
 3  Q      Okay.  Were they -- they were the -- the underwriting
 4         for just the general liability?
 5  A      Yes.
 6  Q      Okay.  So if I understand what you're saying with regard
 7         to the equipment floater section, your belief would be
 8         that that would have been placed with another insurance,
 9         not general liability?
10  A      Correct.
11  Q      And would that have been the auto carrier?
12  A      No.  It could have been a number of carriers that
13         would have insured equipment.
14  Q      Okay.  Do you know whether -- do you have any idea whether
15         the equipment floater section was not provided to Superior
16         Underwriters?
17  A      No.  It very well could have been.
18  Q      Okay.  And regardless with regard to Superior
19         Underwriting, there's -- there's no question -- is there
20         any question in your mind that you received the
21         information with regard to the equipment floater?
22  A      No.
23  Q      Okay.  Meaning that there's no question.....
24  A      No, no question.
25  Q      .....in your mind that you received it?
```

Exhibit E
Page 7 of 15 Pages

Computer Matrix, LLC            Phone - 907-243-0668              jpk@gci.net
310 K Street, Suite 200         Fax    907-243-1473              sahile@gci.net