Page 35

1  Q   Okay.  And what -- what would you have done or what did
2      you do in response to that information that an employee
3      had sustained an injury?
4  A   Instructed Todd that he needed to fill out the claim form
5      for worker's comp.
6  Q   And, again, I haven't been through the entire file but
7      would that have been a document that would have been
8      either obtained or retained by CHI?
9  A   No.
10 Q   Okay.  That would have been something that you would
11     have informed Mr. Christianson that he needed to file
12     directly with worker's comp?
13 A   Yes.
14 Q   And are you aware that that was done?
15 A   No.
16 Q   Okay.  Are you aware that there was a worker's comp
17     claim related to the -- the Jones' injury?
18 A   Yes.
19 Q   Okay.  And that ultimately there was a payout on
20     worker's comp?
21 A   Yes.
22 Q   Do you recall having any conversation with Mr.
23     Christianson either at the time that he reported or
24     shortly thereafter that -- that your belief was that
25     -- and this is a two-part question, one, that it

Exhibit  E
Page  8  of  15  Pages

MICHAEL DENNIS                    11/16/2006         GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                              3:06-CV-00060

Page 36

1      needed to be reported to the worker's comp?
2   A  Yes.
3   Q  And when you say reported, reported to whom, the carrier?
4   A  Yes.
5   Q  Okay. And why in your mind would it have needed to
6      be reported to the worker's comp carrier?
7   A  So that the employee could have been taken care of.
8   Q  And in -- in your view -- well, let me ask it this
9      way.....
10  A  Well, and let me add to that also.....
11  Q  Yeah.
12  A  .....that it's -- it's -- I think it's required that you
13     report it within 10 days by state law.....
14  Q  Okay.
15  A  .....to report an injury.
16  Q  Do you recall having a conversation with Mr. Christianson
17     about your belief that the -- that that particular injury
18     would be addressed by worker's comp?
19  A  No.
20  Q  Okay. Did -- apart from referring him to file a claim
21     with worker's comp, did you refer him or instruct him to
22     file any claim with any other carrier?
23  A  No.
24  Q  Why not?
25  A  It's my understanding that the remedy for someone

Exhibit E

Computer Matrix, LLC                 Phone - 907-243-0668     Page 9 of 15   jpk@gci.net
310 K Street, Suite 200              Fax    907-243-1473                     sahile@gci.net

Page 37

1   being hurt is worker's comp.
2 Q Okay.
3 A An employee I should say being hurt, not someone.
4 Q All right.
5 A An employee being hurt.
6 Q And at some point, although Mr. Christianson's immediate
7   concern may have been with Mr. Jones, do you recall Mr.
8   Christianson being concerned about his own coverage about,
9   you know, whether he and/or his businesses would be
10  covered for this injury?
11 A Yeah, he wanted to make sure that he had the worker's
12  comp in place.
13 Q Okay. And -- and is that when you instructed him that you
14  needed -- he needed to notify worker's comp?
15 A Yes.
16 Q And -- and based on your experience your view was
17  that -- that what you knew about the injury or how
18  the injury occurred, that worker's comp would take
19  care of it?
20 A Yes.
21 Q Now as I understand the -- subsequently after the
22  conclusion of the -- the period, the approximate year
23  period, that there would have been a renewal; there would
24  have been a period by which the customer could renew with
25  that same company; is that right?

Exhibit __E__  
Page __10__ of __15__ Pages

Computer Matrix, LLC  
310 K Street, Suite 200  
Phone - 907-243-0668  
Fax    907-243-1473  
jpk@gci.net  
sahile@gci.net

MICHAEL DENNIS                     11/16/2006            GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                                 3:06-CV-00060

Page 43

1  Q   Because in the CGL it talks about property damage
2      insurance.  Let me see if I can find that.
3  A   Right.  Usually in reference to property damage, property
4      of others that you damage.....
5  Q   Okay.
6  A   .....when you're talking about general liability.
7  Q   How would -- how would the -- what was your understanding
8      of how the auto insurance would plug into the CGL?  I mean
9      how would the two fit together in terms of -- of vehicles?
10     Because you -- you guys bought him -- you obtained the
11     auto insurance or the vehicle insurance through Cascade
12     Insurance Company I think?
13 A   Yes.
14 Q   So I mean I've seen a lot of CGL's where the -- where the
15     auto is included in the CGL.  Was there some reason it was
16     broke apart here?
17 A   To my knowledge the auto is never covered under CGL.
18     It -- you can cover -- under the general liability
19     policy you can cover off-road equipment, equipment
20     that's not licensed for road use.  A bulldozer, CAT,
21     excavator, those are all covered under a general
22     liability policy.  But an auto policy covers vehicles
23     licensed for road use.
24 Q   Okay.  Maybe I'm thinking of a package policy, where
25     you've got.....

Exhibit  E
Page  11  of  15  Pages

Computer Matrix, LLC              Phone - 907-243-0668           jpk@gci.net
310 K Street, Suite 200           Fax     907-243-1473           sahile@gci.net

MICHAEL DENNIS                    11/16/2006              GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                                 3:06-CV-00060

Page 45

1   A   I believe so.  I believe somebody was marketing from our
2       office, looking for coverage.
3   Q   All right.  So then -- so then in '03 it shows -- the
4       first entry says type of business, commercial lines
5       description, sent apps to Brian at Superior Underwriters.
6       And that's who was -- that's who it was ultimately placed
7       with, right?
8   A   Superior, correct.
9   Q   So was there any other insurers that -- that the apps were
10      sent to besides -- and I recognize that Superior's not an
11      -- an insurer.  It's -- it's a commercial broker.  But was
12      it -- was the app sent to anybody but Superior?
13  A   Not that I'm aware of.
14  Q   Okay.  And does your company have some kind of an
15      agreement with Superior, agency relationship agreement?
16  A   I don't know that.
17  Q   Okay.  Do you use other commercial brokers besides them?
18  A   Yes.
19  Q   Okay.  Was it sent to anybody but Superior?
20  A   I -- I don't believe it was.
21  Q   Okay.  And did Superior give you any -- any quotes on any
22      insurers besides Great Divide for the CGL?
23  A   As far as I know, no.
24  Q   Okay.  Was there ever a request for a package policy
25      for Titan through Superior or through anybody else?

Exhibit____E____
Page__12_ of _15_ Pages

Computer Matrix, LLC            Phone - 907-243-0668            jpk@gci.net
310 K Street, Suite 200         Fax     907-243-1473            sahile@gci.net

MICHAEL DENNIS                    11/16/2006             GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                              3:06-CV-00060

Page 46

1   A    No.

2   Q    Okay.

3        MR. FITZGERALD:  Mike, can I ask you what -- what was that

4   date you said that the application was sent?  Was that sometime

5   in 2000, April?

6        MR. FLANIGAN:  Yeah, it says -- yeah, it's 2003 and

7   it's.....

8        MR. FITZGERALD:  Okay.

9        MR. FLANIGAN:  It's March 25th, 2003.  It's page one of

10  the activity sheet -- well, it's page two of the activity

11  sheet.

12       MR. FITZGERALD:  Right, okay.

13       MR. FLANIGAN:  Page one is just like a title sheet.

14       MR. FITZGERALD:  I've got it, thanks.

15       MR. FLANIGAN:  All right.

16       (Cell phone ringing)

17  A    Can I take this call?

18       MR. FLANIGAN:  Sure, absolutely.  Absolutely.

19       (Off record)

20       (On record)

21  Q    In the application for commercial automobile

22       insurance on the Cascade National Insurance

23       application it lists the hydro -- it lists a

24       hydroseeder as a piece of special equipment.  Do you

25       know whether or not the suit papers were -- I mean

Exhibit ___E___
Page __13__ of __15__ Pages

Page 47

1      the suit papers were received by your company,
2      correct?
3   A  I don't know.
4   Q  I mean they're -- well, they're in the file, okay.
5      So obviously they came in. And let me just cover
6      this, isn't -- isn't it common for -- people make
7      claims against the insureds and they will come to you
8      first and they'll say, here, I've got this claim;
9      what do we do with it or.....
10  A  Yes.
11  Q  Okay. And then you send it out to the insurer to -- to
12     handle because that's.....
13  A  Correct.
14  Q  .....not your business; you're -- you're selling;
15     they're claims, right?
16  A  Right.
17  Q  Okay. So can you answer me this, do you know whether
18     or not -- and you were his agent in 2003, right?
19  A  Correct.
20  Q  So did you ever send the suit papers to -- well,
21     excuse me, you were also -- were you also the agent
22     in 2005 for -- for Mr. Christianson?
23  A  Parts of 2005 I believe we were, yes.
24  Q  Okay. How about June?
25  A  I don't believe we were but I'm not.....

Exhibit  E
Page  14  of  15  Pages

Computer Matrix, LLC                Phone - 907-243-0668              jpk@gci.net
310 K Street, Suite 200             Fax     907-243-1473              sahile@gci.net

MICHAEL DENNIS            11/16/2006            GREAT DIVIDE v. CHRISTIANSON
Vol. 1                                                  3:06-CV-00060

Page 48

1  Q  Okay.
2  A  I'm not sure of that.
3  Q  Okay. Well, if the -- if the suit papers appear in the
4     file, that -- that would indicate to you, would it not,
5     that those were brought in by Mr. Christianson and given
6     to you?
7  A  Yeah.
8  Q  Okay. So can you tell us whether or not these were
9     ever submitted by your company to the commercial auto
10    insurer, Cascade National?
11 A  No.
12 Q  Okay. And do you know why that was?
13 A  No.
14 Q  Okay. Would that have been your job or -- or is that
15    somebody else in the company that handles
16    communications with the insurance companies on.....
17 A  Well, I would have given that to Esther to -- to file a
18    claim.
19 Q  Okay.
20 A  Esther West of our office.
21 Q  And what's her job at the company?
22 A  She's a underwrite -- or -- underwriting -- she is a
23    executive assistant.
24 Q  Okay.
25    MR. FLANIGAN: That's all the questions I have at this

Exhibit E
Page 15 of 15 Pages

Computer Matrix, LLC                Phone - 907-243-0668              jpk@gci.net
310 K Street, Suite 200             Fax    907-243-1473              sahile@gci.net